UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL WINTER,<br>  Plaintiff, | :<br>:<br>: |
| v. | :   Civil Action No. 3:06cv216 (PCD) |
| | : |
| HOWARD NORTHROP<br>and PAUL HUFCUT,<br>  Defendants. | :<br>:<br>:<br>: |

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Michael Winter brings this action against former Town of Woodbury Constable Howard Northrop[1] and Connecticut State Police Trooper Paul Hufcut, formerly assigned to the Woodbury Connecticut Resident Trooper's Office, in their individual capacities, alleging false arrest and malicious prosecution, in violation of the Fourth Amendment of the U.S. Constitution, brought under Title 42 U.S.C.A. § 1983, and intentional infliction of emotional distress. Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all counts of Plaintiff's Complaint [Doc. No. 1]. For the reasons stated herein, Defendants' motions for summary judgment [Doc. Nos. 59 & 63] are **granted** as to all counts.

**I. Background**

Because this case is at the summary judgment stage, the Court will view the record in the light most favorable to Plaintiff, as the non-moving party. See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003).

---

[1] Footnote 1 of "Defendant Howard Northrop's Reply to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment" [Doc. No. 67] notes that the correct spelling of defendant's last name is "Northrop," notwithstanding that the parties have used "Northrup" in prior filings.

**A. Background as to Plaintiff Winter and Defendant Northrop**

The following material facts not in dispute are taken from Defendant Northrop's Local Rule 56(a)(1) Statement [Doc. No. 61]. All are admitted by Plaintiff in his Corrected Local Rule 56(a)(2) Statement [Doc. No. 65].

Plaintiff Michael Winter and Debra Thibault began dating in January, 2001. Plaintiff and Ms. Thibault broke up in May, 2002. On or about June 20, 2002, Ms. Thibault sought advice from the Woodbury Police Department, where Defendant Northrop was employed, for handling continued unwanted telephone calls and emails from her ex-boyfriend Winter. Thibault did not make a formal complaint against Winter at that point but was advised by Northrop to send Winter a letter instructing him not to contact her, and to save evidence of future contacts from him if she should wish to make a formal complaint in the future. Also on June 20, 2002, Winter sent Thibault an email stating, "Since you refuse to response [sic] to any of my e-mails and are threatening me," Winter would have no choice but to "play hard ball" and contact Thibault's then-husband Al, unless Ms. Thibault contacted Winter in response to the email.

In late June or early July, 2002, Ms. Thibault sent a certified letter to Plaintiff instructing him not contact her by phone, email, or in person, which he acknowledged having received in a subsequent letter he sent to Ms. Thibault. In September 2002, Ms. Thibault first applied for a restraining order against Plaintiff, and she received one in January 2003. Plaintiff contacted the television shows "People's Court"and "The Jerry Springer Show," and representatives of the shows contacted Ms. Thibault to inquire whether she would be interested in appearing with Plaintiff on these shows, which she indicated she was not. In December 2002, Winter sent Thibault a Christmas card, and also left four voice mail messages for Ms. Thibault on her cell

phone in which he discussed, among other things, appearing on the television shows and sought return of gifts and other items he had given Ms. Thibault.

On or about December 18, 2002, Defendant Officer Northrop applied for an arrest warrant for Plaintiff Winter based on Ms. Thibault's complaint about the recent contacts from Plaintiff, and on December 26, 2002, the Deputy Assistant State's Attorney signed an Information alleging that Winter committed five counts of harassment in violation of Conn. Gen. Stat. § 53a-183.[2] The arrest warrant was signed on January 3, 2003, and was returned to the Woodbury Police Department on or around January 17, 2003. On January 17, 2003, Defendant Northrop called Winter to inform him that he should turn himself in pursuant to the arrest warrant, which Winter did. Northrop had no further contact with Plaintiff, with the possible exception of a conversation in February 2004 regarding Winter's desire to obtain return of certain items from Thibault, until Winter's criminal trial in May 2005. Northrop did not participate in the other criminal matters involving Plaintiff subsequent to the January 17, 2003 arrest. In April 2003, Plaintiff was diagnosed with bipolar disorder, for which he subsequently began treatment.

In addition to admitting the facts above, Plaintiff asserts the following facts with respect to his interactions with Defendant Northrop. In his affidavit in support of the warrant for Plaintiff's arrest, Northrop stated that he told Plaintiff not to contact Thibault. (Opp. to S. J. at

---

[2] Conn. Gen. Stat. § 53a-183. Harassment in the second degree: Class C misdemeanor. "(a) A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

8.) Plaintiff admits that this July 2002 call occurred but contends that Northrop did not so inform Plaintiff but instead was "yelling at" and "threatening" Plaintiff, yet still offered to assist Plaintiff in obtaining return, through a third party, of items from Thibault, a promise he did not follow through on and subsequently denied having made. (Opp. to S. J. at 8-9.) Plaintiff also states that sometime in August 2002, Northrop called him at 1:30 AM and "screamed, yelled at and threatened the Plaintiff." (Opp. to S.J. at 9.) In another call to Plaintiff on an unspecified date, Northrop was allegedly "going crazy over the phone" and again threatening Plaintiff. (Opp. to S.J. at 9.) Plaintiff reports that on March 13, 2004, Northrop called Plaintiff's home and spoke with his parents, with whom Plaintiff lives, and told them, "[Y]our son's sick. He's mentally ill." (Opp. to S.J. at 10.) Plaintiff states that his father told Northrop during this call that the state police had stepped on his oxygen hose when they came to arrest Plaintiff at the family home on March 5, 2004, and that in response Northrop made a sarcastic comment that the police had "heavy boots." (Opp. to S.J. at 11.)

### B. Background as to Plaintiff Winter and Defendant Hufcut

In response to Defendant Paul Hufcut's Rule 56 Statement of Material Facts Not in Dispute [Doc. No. 63-10], Plaintiff denies nearly half of the numbered paragraphs on account of Defendant Hufcut's failure to cite specific pages within Exhibits G, H, I, and J, arguing also that much of the material contained within these exhibits "is inadmissible at trial in the form presented" because it contains hearsay. (Pl.'s R. 56(a)(2) St., Doc. No. 64-3, ¶¶ 40, 49, 52, 62, et al.) Exhibits G, H, I, and J contain police reports, affidavits, fingerprint cards, and a family violence protective order form and report, among other documents. (Pl.'s R. 56(a)(2) St. ¶¶ 40, 49.) Plaintiff does not consistently indicate whether he denies the substance of the assertions in

the contested paragraphs,[3] many of which are rather straightforward factual matters such as the dates and charges associated with Plaintiff's arrests, and whether Defendant Hufcut was involved in each arrest. Therefore, except where otherwise noted, the following facts are taken from the Plaintiff's Statement of Facts in his Memorandum in Opposition to Motion for Summary Judgment [Doc. No. 64-2], which is also presented, verbatim, as the Disputed Issues of Material Fact section of Plaintiff's Rule 56(a)(2) Statements with respect to both Defendants [Doc. Nos. 64-3 & 65].

Defendant Paul Hufcut has been a member of the Connecticut State Police since June, 1992, and has been a Connecticut State Police Sergeant since April, 2002.[4] (Def. Hufcut R. 56 St. ¶¶ 26-27.) During the times relevant to this action, Hufcut was the Resident State Police Sergeant for the Town of Woodbury, Connecticut. (Def. Hufcut R. 56 St. ¶ 29.) The arrest warrant for the January 17, 2003 arrest discussed above was signed by Sergeant Shawn Boyle, formerly of Connecticut State Police Troop L in Litchfield. (Def. Hufcut R. 56 St. ¶ 39.) Plaintiff admits this fact, and offers no evidence that Hufcut was involved in any way in the January 17, 2003 arrest. Hufcut avers that he was not involved in the January 17 arrest. (Hufcut Affidavit, Ex. D to Memo. in Supp. S.J. ¶ 9.)

On January 17, 2003, Debra Thibault was issued protective order CR-318164 by GA4 instructing Michael Winter to "refrain from any contact in any manner with the victim." (Ex. K to Memo. in Supp. S.J.) According to Plaintiff's account, he was next arrested on March 29,

---

[3] See Pl.'s R. 56(a)(2) St. ¶¶ 40-70.

[4] Plaintiff states that he lacks sufficient information to admit or deny these background facts with respect to Hufcut, but admits that Hufcut asserts them in his affidavit. (Pl.'s R. 56(a)(2) St. ¶¶ 26-27.)

2003, by "members of Connecticut State Police Troop L," for harassment and telephonically violating a protective order. (Opp. to Mot. for S.J., 2-3.) He was arrested again on June 15, 2003 for harassment, violation of a protective order, and stalking. (Id. at 3.) He states that he was arrested again on January 4, 2004 by "Troop L" for violating a protective order and making a false 911 call. (Id.) He was arrested on March 5, 2004 by "Troop L" for harassment and violating a protective order. (Id.) Plaintiff does not specify whether Defendant Hufcut took part in each of the arrests attributed generically to Troop L. (Opp. to Mot. for S.J., 3.) A review of the arrest warrants shows that Hufcut was involved in two arrests of Plaintiff in June, 2003, in one case reviewing and signing an arrest warrant and in the other case authoring the arrest warrant. There is no indication of Hufcut's involvement in any of the other arrests. The Complaint does not invoke supervisory liability against Hufcut with respect to the actions of Northrop or Troop L.

On June 7, 2005, Plaintiff was convicted of the felony of Falsely Reporting an Incident Concerning Serious Physical Injury in violation of Conn. Gen. Stat. § 53a-180b, and the misdemeanors of making a false statement under oath in order to mislead a public servant, in violation of Conn. Gen. Stat. § 53a-175b, and disorderly conduct. (Hufcut's Mot. S.J., Ex. L.) These charges resulted from the January 4, 2004 arrest. (Opp. to Mot. for S.J., 4.) Plaintiff was also convicted of one count of felony Violation of a Protective Order in violation of Conn. Gen. Stat. § 53a-223. (Hufcut's Mot. S.J., Ex. L.) That charge resulted from the June 24, 2003 arrest. (Opp. to Mot. for S.J., 4.) Plaintiff is currently appealing the convictions. (Opp. to Mot. for S.J., 3.)

## II. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").

## III. Discussion

### A. False Arrest

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004), quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is a complete defense to a Section 1983 civil rights action alleging false arrest. Curley v. Village of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001), citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation and citation omitted).

Plaintiff brings this action against Defendants Northrop and Hufcut in their individual capacities. Probable cause exists for each of the three arrests in which either Defendant is alleged to have been involved. The four phone messages that Winter left for Thibault in December 2002, as well as the Christmas card he sent her that month, establish probable cause for Northrop's December 18, 2002 application for an arrest warrant for Winter on five counts of harassment in violation of Conn. Gen. Stat. § 53a-183, which resulted in Plaintiff's January 17, 2003 arrest. Northrop had probable cause to believe that these five communications were made "with intent to harass, annoy or alarm," in violation of the statute, in part because he knew that Thibault had sent a certified letter to Winter during the summer of 2002 instructing him not contact her by phone, email, or in person. Having admitted having received this letter from Thibault, Winter was aware that his contacts were unwelcome, yet he persisted in communicating with her, which indicates that he acted with intent to harass, annoy or alarm and establishes

probable cause for his arrest for harassment.

Plaintiff makes several arguments regarding the lack of probable cause for this arrest. He points to the fact that "Thibault began speaking to Northrop and other officers in June, 2002, yet the warrant did not issue for the Plaintiff until December, 2002." (Opp. to Mot. for S.J., 5.) Since the specific acts of alleged harassment to which the warrant related did not occur until December 2002, it could not have issued earlier. If anything, Thibault's previous communications with Northrop regarding her concerns about Plaintiff's behavior following the termination of their relationship, and regarding the certified letter she sent, would have bolstered Northrop's reasonable belief that probable cause existed for the January 2003 arrest for harassment, based on the five contacts by Plaintiff in December. See Grimm v. Krupinsky, 2005 U.S. App. LEXIS 13617 at *4-5 (2d Cir. 2005) ("[Plaintiff-appellant's] continued attempts to contact his wife, despite unequivocal rejections of such contacts for over a year, would lead a person of reasonable caution to believe that [Plaintiff-appellant] was guilty of harassment.")

Plaintiff alleges that "Northrop made no effort to determine the falsity of the statements made by Thibault before seeking a warrant." (Opp. to Mot. for S.J., 5.) Plaintiff further argues that "[a]lthough reasonable to have seriously questioned the veracity of Debra Thibault's statements given his involvement with the case and knowledge regarding Thibault, the Defendant Northrop accepted the assertions of Thibault despite their falsity." (Opp. to Mot. for S.J., 7.) In determining whether probable cause exists, officers are generally entitled to rely on the reports of a "putative victim or eyewitness" to the crime, absent some reason to disbelieve the individual. Brown v. Aybar, 451 F. Supp. 2d 374, 381 (D. Conn. 2006) (collecting cases). Plaintiff admits that Thibault appeared to be a credible witness. (Winter Dep. at 230, Ex. A to Hufcut Memo. in

Supp. of Mot. for S.J.)

Hufcut was involved in two arrests of Plaintiff in June, 2003, and probable cause existed for both. In case DPS 03016156, Hufcut reviewed and signed an arrest warrant as supervisor for Woodbury Police Officer Thomas Ashmore. (Hufcut Aff. ¶ 10, Ex. D to Hufcut Memo. in Supp. of Mot. for S.J.) The arrest for violating a protective order in violation of Conn. Gen. Stat. 53a-223 was made pursuant to a complaint from Thibault on March 29, 2003 that she had received a phone call from Plaintiff at 11 PM on March 28, 2003. (Ex. G to Hufcut Memo. in Supp. of Mot. for S.J.) Thibault had a protective order forbidding Plaintiff from having any contact with her, and she stated that she recognized the voice of the caller as that of Plaintiff. Id. Upon reviewing the arrest warrant application, Hufcut concluded appropriately that it provided sufficient information to establish probable cause for Winter's arrest in June 2003.

In addition, Hufcut was the author of the arrest warrant application in case DPS 03030262. (Hufcut Aff. ¶ 16, Ex. D to Hufcut Memo. in Supp. of Mot. for S.J.) Plaintiff was arrested for stalking in violation of Conn. Gen. Stat. 53a-181c and for violating a protective order in violation of Conn. Gen. Stat. 53a-223 pursuant to a report made on June 17, 2003 by Thibault that Plaintiff was on her property. (Ex. I to Hufcut Memo. in Supp. of Mot. for S.J.) A neighbor also witnessed Plaintiff's presence outside Thibault's house. Id. Thibault's statement that Winter was at her house in violation of the protective order, which was confirmed by the neighbor who also saw Winter there, established probable cause for his second arrest in June, 2003.

For the reasons stated herein, Defendants' Motions for Summary Judgment as to Plaintiff's false arrest claims are **granted.**

### B. Malicious Prosecution

"To make out a claim for malicious prosecution under Connecticut law, the plaintiff must demonstrate that (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause, (3) the proceeding was begun with malice, and (4) the matter ended in plaintiff's favor. As with a false arrest claim, a showing of probable cause will defeat Plaintiff's claim and entitle Defendant to summary judgment." Weinstock v. Wilk, 296 F. Supp. 2d 241, 248 (D. Conn. 2003) (internal citation omitted). As discussed above, probable cause existed for the arrests of Plaintiff in which Defendants were involved, and therefore Plaintiff's malicious prosecution claims fail.

Plaintiff also fails to demonstrate that the prosecutions were terminated in the Plaintiff's favor, as required for a successful malicious prosecution claim. Plaintiff alleges that neither Northrop nor Hufcut was involved in the two arrests which resulted in his four convictions, and that Plaintiff was acquitted of all charges arising from the arrests in which Hufcut and Northrop were involved. (Opp. to Mot. for S.J., 3-4.) However, this appears to be factually inaccurate, based on review of the record submitted by the parties. Plaintiff states that his conviction for violating a protective order arose from his June 24, 2003 arrest. (Opp. to Mot. for S.J., 4.) Since Hufcut was involved in both June 2003 arrests of Plaintiff, one of the arrests in which he was involved led to a conviction of Plaintiff. Even if this were not the case, however, the failure of the arrests to lead to convictions does not establish a lack of probable cause for those arrests, because the quantum of proof required for a conviction is higher than that required to establish probable cause. United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983); Krause v. Bennett, 887 F. 2d 362, 371 (2d Cir. 1989).

For the reasons stated herein, summary judgment is **granted** to Defendants on the malicious prosecution claims.

C.   **Intentional Infliction of Emotional Distress**

Defendants move for summary judgment on Plaintiff's claim that "the actions of defendants were extreme and outrageous...intentional...and likely to cause emotional distress, and that emotional distress was severe." (Compl. ¶¶ 25-27.)  Specifically, Plaintiff alleges that "as a result of the actions of the defendants, the plaintiff suffered a deprivation of his liberty, severe emotional distress, fear, anxiety, worry, pain, suffering, trauma, economic loss, legal fees, loss of his standing in the community, the loss of rights secured to him by law, and was caused to appear in court and defend himself of false criminal charges."  (Compl. ¶ 23.)

To prevail on this claim, Winter must prove that: (1) the defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) the conduct was extreme and outrageous; (3) their conduct was the cause of Winter's distress; and (4) Winter's emotional distress was severe.  Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000) (citing Petyan v. Ellis, 200 Conn. 243, 253 (1986)); see also Benton v. Simpson, 78 Conn. App. 746, 753 (2003); Massey v. Town of Windsor, 289 F. Supp. 2d 160, 165 (D. Conn. 2003); Kilduff v. Consential Inc., 289 F. Supp. 2d 12, 21 (D. Conn. 2003).  Liability requires a showing that Defendants engaged in conduct that "exceeds all bounds usually tolerated by decent society" and is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Appleton, 254 Conn. at 211.  The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent.  Russo v. City of Hartford, 184 F.

Supp. 2d 169, 188 (D. Conn. 2002). Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice. Brown v. Ellis, 40 Conn. Supp. 165, 167 (Conn. Super. Ct. 1984). The Defendants' conduct "cannot be merely rude, tactless or insulting." Garris v. Dep't of Corr., 170 F. Supp. 2d 182, 189 (D. Conn. 2001). Federal courts in this district, interpreting Connecticut law, have interpreted the qualification of extreme and outrageous conduct strictly. Golnik v. Amato, 299 F. Supp. 2d 8, 15 (D. Conn. 2003).

Plaintiff has alleged no behavior on the part of Defendant Hufcut aside from his routine participation in Plaintiff's arrests, based upon probable cause, which does not constitute intentional infliction of emotional distress. See Blalock v. Bender, 2006 U.S. Dist. LEXIS 39323 at *20 (D. Conn. 2006) (finding that Defendant's arresting Plaintiff was neither extreme nor outrageous where Defendant had probable cause to arrest Plaintiff.) To the extent Plaintiff's claim for intentional infliction of emotional distress against Defendant Northrop is based on the mere fact of his involvement in Plaintiff's arrests, it similarly fails. Plaintiff has also asserted that Defendant Northrop yelled and screamed at Plaintiff over the phone, threatening him with arrest if he did not stay away from Ms. Thibault, and that he commented to Plaintiff, upon hearing that state police had stepped on Plaintiff's father's oxygen hose, that police have "heavy boots." These actions are clearly not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Appleton, 254 Conn. at 211. As such, they fail to satisfy the standard for intentional infliction of emotional distress. Summary judgment is **granted** as to this count.

### D. Qualified Immunity and Statute of Limitations

Because the Court has found that probable cause existed for the arrests in question, it

need not consider Defendants' alternative argument that the Plaintiff's claims are barred by qualified immunity. "A police officer is entitled to qualified immunity where...it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007), quoting Cerrone v. Brown, 246 F. 3d 194, 199 (2d Cir. 2001) and Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and citing Anderson v. Creighton, 438 U.S. 635, 641 (1987). "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest - that is if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Id., quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995). Only if a constitutional right was indeed violated does the inquiry arise as to whether the police action was nonetheless reasonable and is therefore protected by qualified immunity. Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 2155-56 (2001). Similarly, because Plaintiff's claims have failed on other grounds, the Court need not consider Defendant Northrop's assertion that the claims are also barred by the applicable statutes of limitation.

### IV. CONCLUSION

Defendants' motions for summary judgment [Docs. Nos. 59 & 63] are **granted** as to all counts.

SO ORDERED.

Dated at New Haven, Connecticut, this  12th  day of February, 2008.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Peter C. Dorsey, U.S. District Judge
　　　　　　　　　　　　　　　　United States District Court